UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **ROSE DAVIS** | * | **CIVIL ACTION NO. 09-0607** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Rose Davis, born October 4, 1968, filed an application for supplemental security income on May 19, 2005, alleging that she became disabled on June 1, 1999, due to atypical chest pain, dilated cardiomyopathy, hypertension, exopthalmus, major depression, and borderline/low average intelligence. After an unfavorable decision issued on May 22, 2007 (Tr. 45-55), the Appeals Council remanded the case to the Administrative Law Judge ("ALJ") to obtain additional evidence concerning claimant's possible mental impairment and to obtain vocational expert testimony. (Tr. 15; 75-76).

Following a video hearing on February 12, 2008, the ALJ issued an unfavorable decision. (Tr. 15-22). Claimant appeals this ruling.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:[1]

**(1) Consultative Psychological Examination by Eric R. Cerwonka, Psy.D., dated November 10, 2007**. Claimant reported that she had been treated for mental health problems as a child, and had been admitted to the hospital for psychiatric treatment at ages 15 and 26.  (Tr. 179).  She reported that she did not receive any further psychiatric treatment for the next 13 years, then resumed psychiatric treatment in 2007.  Her psychotropic medications included Fluoxetine and Seroquel.

---

[1]Although the undersigned reviewed all of the medical records, only those pertaining to the remand are summarized herein.

On examination, claimant's mood appeared to be euthymic, but her affect was mildly restricted.  She reported two prior suicide attempts many years ago.  She stated that she slept fairly well with medication, and her appetite was good.  She denied experiencing auditory and visual hallucinations, delusions or ideas of reference.  Her thinking was organized and goal-directed with no evidence of loose associations, tangential or circumstantial thought processes.

Claimant was alert, and oriented to person, place, time, and situation.  Her comprehension was fairly good.  Her fund of general knowledge seemed fair. (Tr. 179-80).  Her remote memory was intact, but her demonstrated recent memory was only fair.  (Tr. 180).

Claimant's attention and concentration skills were good.  Her pace and persistence were fair.  Her insight appeared to be poor, and judgment appeared to be fair.

Claimant reported that she was capable of limited standing, sitting, limited walking, light lifting, bathing, grooming, dressing, shopping, cooking, and household chores.  She was able to drive, and had a learner's permit.

Administration of the Wechsler Adult Intelligence Scale-III revealed a verbal IQ score of 73, performance IQ of 73, and full scale IQ of 70.  Claimant's overall level of intellectual functioning appeared to be in the low borderline

range. (Tr. 181). The differences between her full scale IQ and her working memory index were both statistically and clinically significant, suggesting that her intelligence test might have underestimated her true intellectual functioning. Dr. Cerwonka estimated that her true full scale IQ score was likely to be in the borderline/low average range at approximately 79, her verbal IQ at approximately 80, and her performance IQ at approximately 80.

The diagnostic impression was major depressive disorder, recurrent, moderate, r/o learning disorder, and borderline/low average intelligence. Claimant's Global Assessment of Functioning ("GAF") score was 70. Dr. Cerwonka observed that she seemed to have obtained a good effect from her medication regimen, and that her disorder would not be expected to prevent her from working. Based on claimant's adaptive functioning and scores on several subtests, he estimated that claimant functioned in the borderline/low average range of measured intelligence, without significant cognitive deficit. However, she exhibited a weakness on subtests which were heavily dependent on her verbal abilities and processing. (Tr. 181-82). But, Dr. Cerwonka observed, this would not be expected to prevent her from working. (Tr. 182).

Dr. Cerwonka concluded that claimant did not have any psychiatric, cognitive, or behavioral problems which would prevent her from working on a

regular basis.  She appeared capable of managing her own funds.

In the Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Cerwonka determined that claimant's ability to understand, remember, and carry out instructions was not affected by her impairment.  (Tr. 185).  Her ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in the routine work setting, were not affected by her impairment.  (Tr. 186).

**(2) Claimant's Administrative Hearing Testimony**.  At the hearing on February 12, 2008, claimant was 39 years old.  (Tr. 222).  She stated that she was 5 feet 8 ½ inches tall and weighed 181 pounds.  (Tr. 235).  She testified that she had an eighth-grade education.  (Tr. 218).

Claimant had last worked at Pizza Hut.  She reported that she had stopped working in 1997 because of neck and back problems.  She said that she had looked for other work, but had not been hired.

Additionally, claimant complained of high blood pressure and aching bones.  (Tr. 219).  She stated that her lower back burned with shocking pain, and sometimes gave out on her.  (Tr. 220).  Her medications included Diovan for hypertension, Prevacid for indigestion, Mobic for her back, Prozac for anxiety, and Tylenol for headaches.  (Tr. 221, 227).

As to activities, claimant testified that she did some cleaning and grocery shopping with her husband. (Tr. 219). She could bathe and dress herself. Her family came to visit her sometimes. She enjoyed reading Bible stories to her children.

Regarding restrictions, claimant testified that she could sit or stand for only about 15 to 30 minutes because of back pain. (Tr. 224-25). She could lift two gallons of milk. (Tr. 219).

**(3) Administrative Hearing Testimony of William Stampley, Vocational Expert ("VE")**. Mr. Stampley classified claimant's past work as a dishwasher or kitchen helper as medium and unskilled. (Tr. 238). Because that job lasted only 60 days, it did not constitute substantial gainful activity.

The ALJ posed a hypothetical in which he asked the VE to assume a 39-year-old claimant with an eighth-grade education; who could lift/carry 50 pounds occasionally and 25 pounds frequently; was able to sit/stand for six hours; could engage in all postural activities occasionally; had a GAF score of 70, and was able to concentrate and persist adequately at simple work. (Tr. 239). In response, Mr. Stampley testified that such claimant could work in simple, medium positions, including kitchen helper, of which there were 2,357 positions statewide and 213,424 nationally; packager/hand, of which there were 747 positions

6

statewide and 225,406 nationally; cannery worker, of which there were 491 light positions statewide and 18,158 nationally; laundry bagger, of which there were 1,464 light positions statewide and 225,406 nationally, and light cleaner/housekeeping, of which there were 6,382 positions statewide and 445,503 nationally. (Tr. 239-40).  When the ALJ modified the hypothetical to include all of the limitations to which claimant had testified, the VE responded that he would limit claimant to simple jobs with a light physical demand stength rating, which would include the cannery worker, laundry bagger and cleaning/housekeeping jobs.  (Tr. 241).

**(4) The ALJ's Findings are Entitled to Deference**.  Claimant argues that: (1) the record was insufficiently developed, and (2) she should have been found disabled under the listings.

As to the first argument, claimant argues that the ALJ indicated that she would send her for a consultative examination regarding her back pain.  (rec. doc. 10, p. 3; Tr. 237).  However, the ALJ failed to do so.

It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  The Fifth Circuit requires, however, a showing that the claimant was prejudiced by the

7

agency's failure to follow a particular rule before such failure will be permitted to serve as the basis for relief from an ALJ's decision. *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

    Here, claimant she has not shown how a consultative examination might have led to a different decision. [rec. doc. 10, p. 4]. The records reflect that claimant complained of back pain sporadically. (Tr. 133, 152, 163, 178). Her diagnosis was acute myofascial strain. (Tr. 164). X-rays were normal. (Tr. 166, 176).

    Although claimant complains that the ALJ failed to order a consultative examination, the record reflects that she missed *two* consultative examination appointments in 2007. (Tr. 177). The ALJ noted that claimant sought very little, if any, treatment for her allegedly disabling pain. (Tr. 20). It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability

determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition). Thus, this argument lacks merit.

Next, claimant argues that the ALJ failed to find her disabled under § 12.05C of the listings. [rec. doc. 10, pp. 4-5]. This listing provides, in pertinent part, as follows:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \*\*\*
>
> C. A *valid* verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function.

(emphasis added). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

Claimant argues that she meets this listing, because she obtained a fall scale IQ score of 70. [rec. doc. 10, p. 5]. However, Dr. Cerwonka found that the differences between her full scale IQ and her working memory index were both statistically and clinically significant, suggestion that her intelligence test might have underestimated her true intellectual functioning. (Tr. 181). He estimated that her true full scale IQ score was likely to be in the borderline/low average range at approximately 79, her verbal IQ at approximately 80, and her performance IQ at approximately 80. Thus, her IQ score of 70 was not *valid* as required by the listings. (emphasis added).

Additionally, claimant did not prove that he met the second part of § 12.05C, *i.e.*, "a physical or other mental impairment imposing an additional and *significant* work-related limitation of function." (emphasis added). While she argues that Dr. Cerwonka diagnosed her with major depressive disorder, he observed that she seemed to have obtained a good effect from her medication regimen, and that her disorder would not be expected to prevent her from working. (Tr. 181). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Thus, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F. R. Civ. P.. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED*

***SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed January 6, 2011, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE